**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**PIKEVILLE**

**CRIMINAL ACTION NO. 7:23-CR-004-DCR**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**V.**                                **MEMORANDUM ADDRESSING**
                        **UNRESOLVED GUIDELINE OBJECTIONS**

**BILL DANIEL COMBS**                                        **DEFENDANT**

\* \* \* \* \*

Pursuant to the directives of the Court's Sentencing Order, the United States submits to the Court this Memorandum addressing the Defendant's unresolved objections to the Presentence Investigation Report ("PSR") that affect the guideline calculations. As discussed in more detail below, it is the position of the United States that the PSR is correct and the offense level enhancements contained therein are properly calculated.

**STANDARD**

As is known to this Court, "[a]t sentencing, the court….must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing…." Fed. R. Crim. P. 32(i)(3)(B). In resolving a disputed portion of the PSR, "[t]he court may not blindly accept the PSR, but '[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the

defendant.'" *United States v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011) (citing *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir.2007).   "The government's burden is triggered when the defendant 'produce[s] some evidence that calls the reliability or correctness of the alleged facts into question' that is more than a 'bare denial.'" *Id*.  *United States v. Lang*, 333 F.3d 678, 681 (6th Cir.2003).

"Sentencing judges may engage in judicial fact-finding and consider evidence under a preponderance of the evidence standard." *United States v. Shannon*, 803 F.3d 778, 788 (6th Cir. 2015) (internal citation omitted).   "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) ("[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.").

**ARGUMENT**

**1.  *Objection #2[1] – Inclusion of Facts in Paragraph #7 and #8 of PSR***

---

[1] Combs' Objections #1 and #3, concerning the age of the victim and Combs' arrest, have been resolved in the final Presentence Investigation Report, thus the United States' brief will not address those.

Combs objects to the inclusion of paragraphs #7 and #8 in the Presentence Investigation Report. Specifically, Combs states that those paragraphs describe activity which is not the basis for the charge to which Combs pleaded guilty, thus they should not be included in the PSR. Paragraphs #7 and #8 describe background information about the genesis of the investigation into Combs and a selection of Facebook messages between Combs and the minor victim which detail prior physical contact between the two, respectively. While technically true that the information contained in those paragraphs are not directly part of the convicted conduct, they describe background information and relevant conduct, so their inclusion in the PSR is appropriate.

The government will delve into the guideline enhancements supported by paragraphs #7 and #8 in greater detail below, but as to their inclusion in the PSR, the law is clear. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. While there is no statutory limitation, there is a Constitutional limitation as to what information courts can consider at sentencing. The Due Process Clause of the Fifth Amendment requires that information used for sentencing be accurate. *United States v. Tucker*, 404 U.S. 443, 447 (1972).

The probation office, in preparing the report, relied on case reports, the Indictment, and the plea agreement [PSR at p. 42], all appropriate and accurate sources of information. Combs does not seem to claim that the information included in Paragraphs #7 and #8 are materially false, just that they should not be included in the PSR. Nevertheless, the

information in those paragraphs consists of documented reports to the Kentucky State Police and documented message logs from Facebook, both reliable sources of information. The paragraphs contain information that provides background context for the investigation and are relevant to the relationship between Combs and the victim and his method of enticement. Both paragraphs are appropriately considered and included in the PSR.

2. ***Objection # 4 – USSG §2G2.1(b)(2)(A) Enhancement***

Combs objects to paragraph #38 which applies an enhancement pursuant to USSG §2G2.1(b)(2)(A), specifically the application of a two-level enhancement if the offense involves the commission of a sexual act. [PSR at pp. 29 and 30]. Application note #1 of that particular guideline directs that the meaning of "sexual act" is the conduct defined in 18 U.S.C. § 2246(2). The statute states that sexual contact is: "(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. §2246(2).

Combs' Facebook messages with the victim, the victim's statement to police, and the victim's forensic interview all indicate that sexual contact occurred between Combs and the victim. The window of when this contact could have occurred is somewhere between 2015 and 2020. As discussed in the PSR and in the discovery, Combs was in a relationship with the victim's mother from approximately 2015 until 2018. [PSR at p. 31].

The victim reported during her 2021 forensic interview that Combs had last lived with her and her mother "around a year ago." The convicted conduct occurred in early 2021. [*See* Indictment].

In her interview with police, the victim clearly stated that Combs inserted his penis in her mouth and anus on multiple occasions. [PSR at para. 14]. During the forensic interview of the victim, she again reiterated that Combs had touched her vagina. [*Id.* at para. 16]. The victim's statements were consistent that some form of sexual contact occurred.

The Facebook messages between Combs and the victim are similarly telling. In a conversation which occurred on January 31, 2021, Combs, at one point in the conversation states, "You remember when I licked in between somewhere? . . . did you like it?" [PSR at para. 8]. Later in the conversation, Combs states, "Did you ever have sex . . . so someone did put a dick in your vagina." [*Id.*]. The victim responded, "no", to which Combs stated, "someone put a dicm [sic] in your ass?" [*Id.*]. To that question, the victim responded "yes." [*Id.*]. Combs states, "was that someone your [sic] talking about me . . . or someone else." [*Id.*]. The victim responded. "maybe" and Combs replied. "So did you mess around with someone else or was it only me . . . it's ok to be honest my love. [*Id.*]. The victim responded with, "only you." [*Id.*]. In a February 1, 2021 conversation, Combs stated, "I only licked on [sic] it once I really wish I did it more." [*Id.*].

At the very least, Combs' own words indicate that sexual contact occurred pursuant to subsection (B) of § 2246(2)—contact between mouth and vulva. However, given the victim's consistent statements and allusions made in Combs' other messages, it is almost

5

certain that sexual contact occurred on more than one occasion between Combs and the victim. Conservatively, the earliest the contact would have occurred was 2015, but it could have occurred as late as 2020. There is no indication that the images themselves contained sexual contact. The probation office, in its final report, made it clear that it relied on USSG §1B1.3(a)(1)(A) and its allowance of conduct that occurs "in preparation of the offense" to be included in relevant conduct. The United States agrees with that assessment.

By all indications, Combs groomed the minor victim for several years including all the prior physical contact perpetrated on the victim. Combs's grooming behavior, including the sexual contact, made it far more likely that the victim would be willing to produce the images for which Combs stands convicted. This is evidenced by the Facebook conversations that led to the production of the images. In the messages, Combs repeatedly references the instances of physical contact, directly using those instances to further sexually groom the victim and entice her to send him the images he desired. Simply put, here the prior sexual acts were in furtherance of the crime of production. The prior sexual contact was part of relevant conduct that prepared Combs to entice the victim in the convicted instances, thus the §2G2.1(b)(2)(A) enhancement is appropriately applied.

3. ***Objection #5 – USSG §2G2.1(b)(3) Enhancement***

Combs objects to the application of a 2-level enhancement pursuant to USSG §2G2.1(b)(3) for knowingly engaging in distribution. [PSR at pp. 30-31]. Application Note #3 of §2G2.1(b)(3) instructs that a defendant "knowingly engaged in distribution" if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to

6

distribute. USSG §2G2.1(b)(3) and n. 3. There is no indication that Combs himself distributed the images, but the probation office was clear in its final report that the application of the enhancement under §2G2.1(b)(3) is based on Combs' command and inducement of the victim to distribute the images to him. [*See* PSR at p. 32].

All available evidence and the language of the plea agreement that Combs signed indicates that Combs induced the minor victim to engage in distribution of child sexual abuse material. The plea agreement states as follows, "the defendant used Facebook Messenger to persuade a minor female to send the defendant explicit photos of herself. After several days of exchanging messages, on February 10, 2021, the minor female used Facebook Messenger to send the defendant two photographs of her exposed vagina." [PSR at p. 32]. Specifically, on February 7, 2021, Combs sent a Facebook message to the victim which read, "I really want to see some things . . . I really want to see somewhere I'd like to lick on . . . I really want to see your pussy I'm doing [sic] to lick it. It would make me happy to get a picture of it." [PSR at p. 7]. A few days later, the victim sent Combs two photos of her vagina via Facebook Messenger.

A plain reading of the guideline instructs that inducing or causing another to distribute child pornography qualifies one for an enhancement under §2G2.1(b)(3). Here it is clear that the distribution of two images depicting the minor victim was a result of Combs' urging. The enhancement pursuant to §2G2.1(b)(3) is appropriately applied.

4. ***Objection #6 – USSG §3B1.4 Enhancement***

Combs objects to the application of a 2-level enhancement pursuant to USSG §3B1.4 for using or attempting to use a person less than eighteen years of age to commit

the offense or assist in avoiding detection of, or apprehension for, the offense. [PSR at p. 32]. Importantly, application note #1 of §3B1.4 instructs that "used or attempted to use" includes directing, commanding, encouraging, intimidating, counseling, training, procuring recruiting, or soliciting. USSG §3B1.4 and n. 1. Application note #2 of §3B1.4 limits the guideline, stating "the Court is not to apply this adjustment if the offense guideline incorporates this factor. For example, if the defendant receives an enhancement under USSG §2D1.1(b)(16)(B), for involving an individual less than 18 years of age in the offense, USSG §3B1.4 would not apply. USSG §3B1.4 and n. 4.

As the probation office points out in the PSR, USSG §3B1.4 contemplates the use of a minor, *not* that the offense involved child pornography or the age of the victim. [PSR at p. 32]. There is a distinction between engaging a minor in sexually explicit conduct for the purpose of producing any visual depiction of such conduct (the conduct for which Combs stands convicted) and with using a minor to photograph that conduct to produce the child sex abuse material. The Fifth Circuit tackled this very issue in *United States v. Broxmeyer*, 699 F .3d 265, 281 (2nd, 2012), where the victim was both the subject of the images and the photographer. See also *United States v. Hall*, 733 Fed.Appx. 808 (6th Cir. 2018) (applying the holding in *Broxmeyer* to a similar set of facts as those of the instant case). The *Broxmeyer* Court reasoned that the base offense level would have applied in a §2G2.1 case by virtue of the victim being the subject of the images, regardless of who took those images. *Id*. If the person who took the images had been another child, a §3B1.4 enhancement would properly apply in recognition to the distinct harm against that child photographer. *Id*. When a defendant visits those

8

distinct harms on the same child, being the subject and the photographer, the application of the §3B1.4 enhancement is appropriate to account for that harm on the victim. *Id.*

Here, the victim was both the subject and the photographer. Combs enticed the victim to take photographs of her own exposed vagina and send those photographs to Combs via Facebook Messenger. Thus, the enhancement pursuant to §3B1.4 was properly applied.

5. ***Objection #7 – USSG §4B1.5 Enhancement***

Finally, Combs objects to the application of a guideline enhancement pursuant to USSG §4B1.5(b), that is an enhancement applied to defendants engaging in a pattern of activity involving prohibited sexual conduct. [PSR at p. 33]. §4B1.5(b) states that in any case in which the offense of conviction is a covered sex crime, neither §4B1.1 (career offender) nor subsection (a) of this guideline (prior conviction for a sex offense) applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct, the offense level shall be 5 plus the offense lever determined under Chapters Two and Three. USSG §4B1.5(b).

Application note #2 of §4B1.5 defines a covered sex crime as "(A) an offense, perpetrated against a minor, under (i) chapter 109A of Title 18, United States Code; (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense; (iii) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or (iv) 18 U.S.C. § 1591; or (B) an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note. Combs' crime of conviction is under Chapter 110, so it is covered for the purpose of §4B1.5.

Application note #4(A) describes "prohibited sexual conduct" for the purposes of §4B1.5, including, among others, any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B). Importantly, under 18 U.S.C. § 2426(b)(1)(A) or (B), offenses under state law consisting of conduct that would have been a federal offense if such crime occurred within the special maritime and territorial jurisdiction of the United States are qualifying. Application note #4(B)(i) of §4B1.5 states that for §4B1.5(b) to apply the defendant had to have engaged in prohibited sexual conduct with a minor on at least two separate occasions. Moreover, application note #4(B)(ii) allows for consideration of prohibited sexual acts regardless of when they occurred or if they resulted in a conviction.

In its application of §4B1.5, probation counted the offense of conviction, a covered Chapter 110 offense and the prior sexual activity with the victim. Those prior sexual acts would be considered Chapter 109A offenses under 18 U.S.C. § 2243(a), sexual abuse of a minor. Combs, by his own description in messages to the minor, knowingly engaged in a sex act with the minor victim, who at the time had not attained the age of 16 and was certainly four years younger than Combs. *See* 18 U.S.C. § 2243(a). This conduct constitutes a violation of state law, likely First Degree Sex Abuse under Kentucky law, and would have been a violation of federal law had it occurred in the special maritime or territorial jurisdiction of the United States. *See* K.R.S. 510.110(1)(c) ("A person is guilty of sexual abuse in the first degree when, being twenty-one (21) years old or more, he or she subjects another person who is less than sixteen (16) years old to sexual contact; *see also* K.R.S. 510.010 ("Sexual contact means the touching of a person's intimate parts . . . for the purpose of sexual arousal or gratification of either party.").

Given these two separate occasions of prohibited sexual conduct with a minor, the application of an enhancement under §4B1.5(b) is appropriate,

## CONCLUSION

For the aforementioned reasons, and those to be further discussed at the sentencing hearing, it is the position of the United States that Bill Combs' presentence report is correct, and the enhancements to his offense level contained therein are properly calculated.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: s/ Justin E. Blankenship
Justin E. Blankenship
Assistant United States Attorney
601 Meyers Baker Rd., Suite 200
London, KY 40741
(606) 864-5523
Justin.blankenship2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2024, the foregoing was electronically filed through the CM/ECF system, which will send notice of the filing to all counsel of record.

s/ *Justin E. Blankenship*
Assistant United States Attorney